**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| FREDY ANDRADE RODRIGUEZ, | ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | |
| | ) | No. 2:26-cv-02203-SHL-cgc |
| SCOTT LADWIG, Acting Director of the New Orleans Field Office of ICE, in his official capacity, | ) ) ) | |
| Respondent. | ) ) | |

**ORDER GRANTING PETITION**

On February 26, 2026, Petitioner Fredy Andrade Rodriguez filed the Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2241.  (ECF No. 1.)  Andrade Rodriguez challenges his

continued detention in the West Tennessee Detention Facility without a bond hearing and seeks a

declaration that his "indefinite detention" violates due process and his Fourth Amendment rights,

and release "on reasonable bond or parole."  (Id. at PageID 7.)  He contends that if he is subject

to immigration detention, such detention falls under 8 U.S.C. § 1226(a), not § 1225.  (ECF No. 8

at PageID 32.)  Respondent Scott Ladwig responded on March 16.  (ECF No. 11.)  Andrade

Rodriguez replied the next day.  (ECF No. 12.)

For the reasons explained below, Andrade Rodriguez is entitled to immediate release, and

the Petition is **GRANTED**.

**BACKGROUND**

Andrade Rodriguez, a citizen of Mexico, initially entered the United States without

inspection in 2004.  (ECF No. 8 at PageID 24.)  In 2008, he returned to Mexico to attend his

grandmother's funeral.  (Id.)  The next year, he returned to the United States, again without

inspection, to live and work here. (Id.) Andrade Rodriguez has "resided continuously" in the U.S. "interior" since then, including in Memphis, Tennessee. (Id.) He has worked and filed taxes here, in addition to having three daughters who are U.S. citizens, and a current "long-term partner [of] approximately nine years." (Id.) Andrade Rodriguez's criminal history consists of a 2012 arrest for driving without a license, which "resulted in no criminal consequences" and his release. (Id. at PageID 26.) He has never been charged or convicted of a crime in the United States.

On December 5, 2025, Andrade Rodriguez was detained by Immigration and Customs Enforcement ("ICE") officers under unknown circumstances and detained in the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 8 at PageID 24.) Further, he was charged with being "an alien present in the United States who has not been admitted or paroled." (ECF No. 11-1 at PageID 46.) Since his arrest, he has requested a bond hearing twice in the Immigration Court and both requests were denied. (ECF Nos. 11-2, 11-3.) In the first denial, the Immigration Judge ("IJ") stated that the "Immigration Court lacks jurisdiction to redetermine custody to aliens who are present in the United States without admission." (ECF No. 11-2 at PageID 52.) In the second denial, the IJ stated that the "Department of Homeland Security [("DHS")] has classified [Andrade Rodriguez] as an applicant for admission," and as such, the IJ lacked jurisdiction under Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025), to conduct a bond hearing. (ECF No. 11-3 at PageID 56.) He remains at the West Tennessee Detention Facility in Mason, Tennessee. Andrade Rodriguez filed the instant Petition on February 26, 2026, arguing that he is illegally detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Andrade Rodriguez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly

2

declared ineligible for a bond hearing or release on bond because he is an "applicant for admission." Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. For example, noncitizens with certain criminal records may not be released on bond. 8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Andrade Rodriguez alleges failure to follow § 1226 and violations of the Fourth and Fifth Amendments.  (ECF No. 1 at PageID 6–7.)  He seeks a bond hearing, or release on bond or parole.  (Id. at PageID 7.)  In his Reply, however, he clarifies that he seeks "immediate release from ICE custody."  (ECF No. 12 at PageID 60.)  In response, Respondent contends that § 1225 applies to Andrade Rodriguez, his detention does not violate his Fourth or Fifth Amendment rights, and a bond hearing is the appropriate remedy if the Petition is granted.  (ECF No. 11 at PageID 39–43.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Andrade Rodriguez challenges his detention without bond as Sixth Circuit precedent and his constitutional rights.  (ECF No. 1 at PageID 15–17.)  The Court first considers whether § 1225 or § 1226 applies to Andrade Rodriguez, and second, analyzes his constitutional claims.

I.    **Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute

4

must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" <u>Kentucky v. Biden</u>, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing <u>Walters v. Metro. Edu. Enters., Inc.</u>, 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>        . . .
>        (2)    Inspection of other aliens
>               (A)    In general
>                      Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)    Arrest, detention, and release
>        On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>        (1)    <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
>        (2)    <u>may</u> <u>release</u> the alien on—

> > (A)     bond of at least $1,500 with security approved by, and
> > containing conditions prescribed by, the Attorney General .
> > . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who also,

> is charged with, is arrested for, is convicted of, admits having committed, or admits
> committing acts which constitute the essential elements of any burglary, theft,
> larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
> that results in death or serious bodily injury to another person . . . .

Id. § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ."  Lopez-Campos, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community."  Id. (citing Guerra, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a

hearing before an IJ on the issue.[1]

Andrade Rodriguez argues that ICE's new interpretation of § 1225(b) deviates from

"circuit precedent recognizing bond eligibility" and violates his rights under the Fourth and Fifth

Amendments.  (ECF No. 1-3 at PageID 13–16.)  He argues that § 1226(a) applies to him because

it governs arrest and detention of immigrants who are interior residents of the United States in

"ordinary § 1229a removal proceedings."  (ECF No. 12 at PageID 61.)  He emphasizes that his

case does not consist of an arrest of a "recent arrival" near the U.S.-Mexico border, and that he is

---

[1] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest
may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . .
the respondent may . . . request amelioration of the conditions under which he or she may be
released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the
alien, and determine the amount of bond, if any, under which the respondent may be released . . .
.").

an interior resident with (1) over a decade "of residence," (2) "U.S.-citizen children, (3) long-term employment," and (4) "robust community ties in Tennessee." (Id. at PageID 62.) He argues that as a result, if § 1225 is applicable to him, it must then apply to all interior residents who have not been granted admission and § 1226 would have "little work" to do, contrary to congressional intent. (Id.)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Andrade Rodriguez because he is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 11 at PageID 39.) As a result, he asserts that "[Andrade Rodriguez] is subject to mandatory detention and not entitled to a bond hearing." (Id.) For support, he relies on Yajure Hurtado, in which the BIA decided that the plain language of § 1225(b) deprives IJs of jurisdiction to "hear bond requests" of non-admitted immigrants like Andrade Rodriguez. (ECF No. 11 at PageID 40 (citation omitted).) He also argues that the decisions in Gonzalez v. Ladwig, No. 26-cv-02017, 2026 WL 413602 (W.D. Tenn. Feb. 13, 2026) and Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), support ICE and DHS's application of § 1225 to interior residents. (Id. at PageID 40–41.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Andrade Rodriguez is an "applicant for admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. However, Andrade Rodriguez was not "arriving" when he was detained in west

7

Tennessee in 2025, after having been in this country for approximately seventeen years.  (ECF

No. 8 at PageID 24.)  Also, the record does not show that he was eligible for expedited removal

proceedings.  It follows that the mandatory detention provision of § 1225 does not apply to him.

Moreover, § 1225's subject matter undercuts Respondent's reading of the statute.

Section 1225 describes the process of inspecting and removing immigrants actively crossing the

border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision

[described in § 1225] generally begins at the Nation's borders and ports of entry, where the

Government must determine whether an alien seeking to enter the country is admissible.").  And

Respondent's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute

itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia &

Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply

§ 1225(b)(2)(A) to Andrade Rodriguez would render the following underlined words

superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining
> immigration officer determines that an alien seeking admission is not clearly and
> beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding
> under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Andrade Rodriguez

was seeking admission at the time of his detention, nor does it show that he had received a

determination by an immigration officer that he was "not clearly and beyond a doubt entitled to

be admitted."  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not

in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for

seventeen years.  It would be untenable to interpret "applicant for admission" using its ordinary

meaning, while doing so outside the context of the provision.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001).  Andrade Rodriguez's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Andrade Rodriguez has a single arrest in the United States, but has no arrests, charges, indictments, or convictions for crimes listed in § 1226(c), so that mandatory detention provision cannot apply to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Andrade Rodriguez's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Andrade Rodriguez was charged with being removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  They "may continue to detain [him]" or they "may release [him] on bond." Id.  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Andrade Rodriguez's favor, but the Congressional intent behind § 1226(a) is also supportive. In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond. Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally. In fact, it proves the opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

For the reasons stated above, the Court is unpersuaded by the recent cases cited by Respondent, and disagrees with the statutory interpretation in Gonzalez, 2026 WL 413602, which is nonbinding here. Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC, 2020 WL 6694299, at *3, *3 n.1 (W.D. Tenn. Nov. 13, 2020) ("Decisions made by district courts within the same district are not binding on one another.") (citing Chinn v. Jenkins, No. 02-cv-512, 2018 WL 488159, at *2 (S.D. Ohio Jan. 19, 2018)). Moreover, Ladwig's reliance on Yajure Hurtado in support of his statutory argument fails because the BIA lacks authority to opine on constitutional challenges to agency action. Sterkaj v. Gonzales, 439 F.3d 273, 279 (6th Cir, 2006); see also Loper Bright Enters. v. Raimondo, 603 U.S. 369, 398–402 (2024) ("The very

10

point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities.") (explaining that reviewing courts "decide all relevant questions of law and interpret statutory provisions" (citation modified)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of Andrade Rodriguez, an illegal immigrant who has been continuously present in the United States for approximately seventeen years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## II.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Andrade Rodriguez argues that Ladwig violates the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing. (ECF Nos. 1 at PageID 13–14; 12 at PageID 64–65.) Specifically, he argues that "prolonged, potentially open-ended detention of a non-criminal, long-term resident" with "deep community ties, without a meaningful opportunity

to obtain bond" violates his right to due process of law.  (ECF No. 12 at PageID 65.)  He emphasizes that he has lived in the United States for over seventeen years, he is eligible for "cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)–(D), "his minor children depend on him financially and emotionally," he is "steadily employed," and his "only arrest was a minor driving-without-license charge over a decade ago."  (Id. at PageID 65–66.)  Given these facts, he asserts that his detention without bond is unrelated "to any legitimate government interest in ensuring attendance at proceedings or protecting public safety."  (Id. at PageID 66.)  Respondent, however, asserts that Andrade Rodriguez's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 11 at PageID 41–42 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)  In fact, Respondent contends that, because Congress decided under § 1225 that Andrade Rodriguez must be mandatorily detained, Respondent has afforded him the process he is entitled to.  (Id. at PageID 41.)

Here, because § 1226(a) applies to Andrade Rodriguez, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Andrade Rodriguez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Andrade Rodriguez's minor criminal record for an offense over ten years ago, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Andrade Rodriguez was present in the United States, living with his partner for at least nine years, and raising his three daughters who are U.S. citizens.  (ECF No. 8 at PageID 23–26.)  These facts indicate his ties to the United States, his desire to remain, and his recent expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Andrade Rodriguez is entitled to immediate release. See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.[2] Thus, consistent with the Court's decision in Godinez-Lopez, and upon consideration of the record, Andrade Rodriguez's petition is **GRANTED**.[3]

## CONCLUSION

For the reasons stated above, Andrade Rodriguez's Petition is **GRANTED**. Respondent is ordered to release Andrade Rodriguez immediately. Respondent is **ENJOINED** from pursuing Andrade Rodriguez's detention under 8 U.S.C. § 1225(b)(2)(A). Respondent is further

---

[2] Contrary to Respondent's assertions otherwise (ECF No. 11 at PageID 43–44), release conditioned on a bond hearing is not appropriate here. Because ICE purported to detain Andrade Rodriguez under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a). Instead, immediate release is the appropriate remedy for Andrade Rodriguez's deprivation of liberty. See Cardona v. Ladwig, No. A203-803-130, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025) ("Because Petitioner's rights to a bond hearing under § 1226(a) have been denied, '[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and, although Petitioner's] release today cannot cure his loss of liberty since [November 3, the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so.'" (quoting Yao v. Almodovar, 25 Civ. 9982, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025))). After all, the Government may at any time detain an illegally present noncitizen under § 1226(a), subject to a bond hearing, and thus it is not necessary for this Court to order one. ICE has that discretion. See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

[3] Because the Petition is granted on due process grounds, the Court need not reach the question of whether Andrade Rodriguez's Fourth Amendment claim separately entitles him to relief.

**ORDERED** to file a Status Report with this Court on or before April 21, 2026, to certify

compliance with this Order.

      **IT IS SO ORDERED,** this 16th day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
